IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

BRENDA A. HINES,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C16-1005

REPORT AND RECOMMENDATION

TABLE OF CONTENTS

I.   INTRODUCTION ................................... 3

II.  PROCEDURAL BACKGROUND ...................... 3

III. PRINCIPLES OF REVIEW .......................... 4

IV. FACTS ............................................ 5
    A.  Hines' Education and Employment Background ........ 5
    B.  Medical Evidence Pertinent to Objections Raised by Hines ........ 6

V.  CONCLUSIONS OF LAW ............................ 8
    A.  ALJ's Disability Determination .................... 8
    B.  Objections Raised by Claimant ................... 10
        1.  Dr. Ottavi's Opinions ...................... 10
        2.  Medical-Vocational Guidelines and Dictionary of Occupational Titles ....................... 14
    C.  Reversal or Remand ........................... 17

VI. RECOMMENDATION ............................... 18

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Brenda A. Hines on February 23, 2016, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disabled widow's benefits and Title XVI supplemental security income ("SSI") benefits. Hines asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disabled widow's benefits and SSI benefits. In the alternative, Hines requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

Hines filed applications for disabled widow's benefits and SSI benefits on October 5, 2012. Hines alleged disability due to a hernia, bilateral hearing loss, and rheumatoid arthritis. She alleged she became disabled on September 22, 2011. Her applications were denied upon initial review, and on reconsideration. On May 7, 2014, Hines appeared via video conference with her attorney before Administrative Law Judge ("ALJ") David G. Buell for an administrative hearing.[1] In a decision dated July 8, 2014, the ALJ denied Hines' claims. The ALJ determined Hines was not disabled and not entitled to disabled widow's benefits or SSI benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. Hines appealed the ALJ's decision. On December 22, 2015, the Appeals Council denied Hines' request for review. Consequently, the ALJ's July 8, 2014 decision was adopted as the Commissioner's final decision.

On February 23, 2016, Hines filed the instant action for judicial review. A briefing schedule was entered on May 5, 2016. On August 3, 2016, Hines filed a brief arguing there is no substantial evidence in the record to support the ALJ's finding that she is not

---

[1] At the hearing, Hines was represented by attorney Laura Seelau. On appeal, Hines is represented by attorneys Corbett A. Luedeman and Thomas A. Krause.

disabled and she is functionally capable of performing other work that exists in significant numbers in the national economy. On September 2, 2016, the Commissioner filed a responsive brief arguing the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. Hines filed a reply brief on September 13, 2016. The next day on September 14, Judge Leonard T. Strand referred this matter to a magistrate judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Additionally, on July 19, 2016, both parties together filed a joint statement of facts addressing the case's procedural history, testimony from the administrative hearing, and Hines' medical history. *See* docket number 9. The parties' joint statement of facts is hereby incorporated by reference. Further discussion of pertinent facts will be addressed, as necessary, in the Court's consideration of this matter.

## *III. PRINCIPLES OF REVIEW*

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the

Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id*. Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## IV. FACTS

### A. Hines' Education and Employment Background

Hines was born in 1961. She completed the ninth grade and stopped attending school in the tenth grade. While in school, she was enrolled in special education courses.

4

At the administrative hearing, Hines testified she had particular difficulty with math and reading. In the past, Hines worked as a caregiver and a housekeeper.

### B. Medical Evidence Pertinent to Objections Raised by Hines

On March 20, 2013, at the request of Disability Determination Services ("DDS"), Hines was referred to Dr. Tom Ottavi, Ph.D., for a diagnostic mental status examination. In considering Hines' background, Dr. Ottavi noted when Hines was school-aged, she had "some" learning delays and difficulties. She was enrolled in special education classes. Dr. Ottavi also considered Hines' current mental health difficulties. Hines reported problems with sleeping, including having "significant" difficulty falling asleep, and then having restless sleep throughout the night. Dr. Ottavi reviewed Hines' limited mental health treatment:

> She reports talking to a mental health professional about one time back at least 8 to 10 years ago and only going on one occasion, but she recalls the person felt she was fairly depressed.

(Administrative Record at 404.) Dr. Ottavi further noted Hines "continues to have some interference with thoughts, insecurities, and guilt and anger issues related to both her ex-husband's physical abuse and the sexual and physical abuse from her father."[2] Finally, Dr. Ottavi addressed Hines' physical problems, and noted she suffers from shoulder pain that radiates up and down her arms.

Turning to a review of various records in Hines' file supplied by DDS, Dr. Ottavi addressed Hines' educational records:

> Records provided by DDS are very difficult to read, but look to be from area education programming[.] . . . One of the documents does note psychological testing being administered and likely says a WISC verbal IQ score = 58, WRAT reading = 3.5, and diagnosis of educable mentally retarded is

---

[2] Administrative Record at 404.

5

noted. . . . Stanford-Binet [administered when Hines was 7 years and 7 months old,] yielded a low-borderline functioning with mental age of 5-6. Functional level was noted to be high-educable to low-borderline mental retardation. . . . Overall, these results are fairly unclear, but do raise some questions about overall mental functioning level.

(Administrative Record at 404-05.)

On the mental status examination, Dr. Ottavi found Hines had a "somewhat" negative affect and appeared tense and uncomfortable. Dr. Ottavi found "no speech problems and language expression was generally good."[3] Dr. Ottavi estimated Hines' intellectual ability to be in the lower average to "possibly" borderline range. Dr. Ottavi found Hines' mood to be "mostly" depressed with feelings of helplessness, hopelessness, fatigue, anhedonia, sleep problems, guilt, and thought negativity. Dr. Ottavi also found the following signs and symptoms: agitation, irritability, being easily frustrated, difficulty concentrating, low appetite, sleep problems, and "very poor" concentration. Lastly, Hines reported "significant" discomfort leaving the home and interacting with others in public. Based on his examination, Dr. Ottavi diagnosed Hines with major depressive disorder, anxiety disorder, history of learning delays in school, and childhood borderline IQ (no adult measurements).

Dr. Ottavi concluded his report with following opinions regarding Hines' functional abilities:

> By current reports, she would appear to struggle significantly to maintain attention, concentration, and work pace in a work setting and some mild difficulties with remembering and understanding instructions, procedures, and locations. [Hines] is also having great difficulty going out in public and managing significant stress and depression and would therefore likely have difficulties with ongoing appropriate interactions with supervisors, coworkers, and the public. She does appear to

---

[3] *Id.* at 405.

6

> have a fairly good sense of judgment in terms of people skills and having a fairly good work attitude and ethic for much of her life; however, given current levels of reactivity to stress and also ongoing depression, she would likely have difficulty adjusting appropriately to changes in the workplace.

(Administrative Record at 405.)

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Hines is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed

7

> impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined Hines had not engaged in substantial gainful activity since September 22, 2011. At the second step, the ALJ concluded from the medical evidence Hines has the following severe impairments: mood disorder, anxiety disorder, and degenerative joint disease of the right shoulder. At the third step, the ALJ found Hines did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Hines' RFC as follows:

8

> [Hines] has the residual functional capacity to perform light work . . . except she can occasionally reach overhead with the dominant right arm. Further, she is limited to performing only simple, routine, and repetitive type of work. Work that does not require any close attention to detail, and does not require the use of any independent judgment on the job. In addition, she requires an occupation where all of the tasks assigned to her could be done without public interaction. [Hines] would also be able to perform occupations and work tasks that are not at a production pace. But, she could not do occupations with strict production quotas and she requires flexibility in precisely how and when she would do the tasks that were assigned to her. Moreover, she could perform job tasks only if they did not require acquiring or hearing information using written English. That is, she would not be able to read content or write information to share with others in the workplace.

(Administrative Record at 24.) Also at the fourth step, the ALJ determined Hines is unable to perform her past relevant work. At the fifth step, the ALJ determined based on her age, education, previous work experience, and RFC, Hines could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Hines was not disabled.

### B. Objections Raised by Claimant

Hines argues the ALJ erred in three respects. First, Hines argues the ALJ failed to properly evaluate the opinions of Dr. Ottavi, a consultative examining source. Second, Hines argues the ALJ erred by not finding her disabled under the medical-vocational guidelines. Finally, Hines argues the ALJ erred by not resolving conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT").

#### 1. Dr. Ottavi's Opinions

Hines argues the ALJ failed to properly consider and develop the opinions of Dr. Ottavi, a consultative examining source. In particular, Hines argues the ALJ ignored Dr. Ottavi's concern for the level of her intellectual functioning. Hines maintains that

given Dr. Ottavi's examination and concern that she may have borderline intellectual functioning, the ALJ should have ordered another consultative examination, including adult IQ testing. Hines concludes this matter should be remanded for an assessment of her intellectual abilities and IQ testing.

In considering medical evidence, an ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. §§ 404.1527(c), 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

Furthermore, when considering a physician's RFC assessment, an ALJ is not required to give controlling weight to the physician's assessment if it is inconsistent with other substantial evidence in the record. *Strongson*, 361 F.3d at 1070; *see also Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling, 96-8p (July 2, 1996).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Finally, an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 416.919a(a) ("If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination."). 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination [may be purchased] to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim." *Id.* For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

In his decision, the ALJ addressed Dr. Ottavi's opinions as follows:

> Further, in March 2013, a psychological consultative examination was performed by Thomas M. Ottavi, Ph.D. (Exhibit 10F). Dr. Ottavi concluded that by current reports, [Hines] would appear to struggle significantly to maintain attention, concentration, and work pace in a work setting and some mild difficulties with remembering and understanding

11

> instructions, procedures, and locations. Additionally, Dr. Ottavi noted that [Hines] had great difficulty going out in public and managing significant stress and depression and would likely have difficulties with ongoing appropriate interactions with supervisors, coworkers, and the public. The undersigned recognizes that [Hines] has limitations and accounted for the[m] in the above residual functional capacity. While these limitations are noted, the undersigned concludes that Dr. Ottavi's conclusions are generally not consistent with the objective medical evidence. Moreover, it appears that Dr. Ottavi relied primarily on [Hines'] self-reported limitations. This is evidenced by the fact that [she] sought very little treatment for these alleged symptoms. Even [Hines] reported that she sought treatment with a medical health professional eight or ten years previously and she only went on one occasion. (Exhibit 10F/2). Based on this evidence, the undersigned assigns Dr. Ottavi's report little weight.

(Administrative Record at 26.)

Given the ALJ's thorough review of Dr. Ottavi's mental status examination of Hines, and having reviewed the entire record, including the ALJ's overall discussion of the objective medical evidence and Hines' treatment history, I believe the ALJ properly considered and weighed the opinion evidence provided by Dr. Ottavi. Specifically, the ALJ granted Dr. Ottavi's opinions "little" weight, and addressed inconsistencies within his opinions and the record as a whole. Moreover, while Dr. Ottavi indicated that Hines may have "borderline" intellectual functioning based primarily on tests from when Hines was 7 years old, he found she had "no speech problems and language expression was generally good."[4] Furthermore, Dr. Ottavi estimated Hines' intellectual ability to be in the lower average to "possibly" borderline range, and did not suggest Hines undergo further testing. Therefore, based on the entirety of the record, I conclude the ALJ properly considered and applied the factors for evaluating a consultative examiner's opinions, and properly granted

---

[4] Administrative Record at 405.

"little" weight to Dr. Ottavi's opinions. *See Wiese*, 552 F.3d at 731. Furthermore, a consultative examination is unnecessary as the evidence is sufficient to support the ALJ's determination with regard to the opinions of Dr. Ottavi. *See Barrett*, 38 F.3d at 1023. Accordingly, even if inconsistent conclusions could be drawn on this issue, the ALJ's conclusions should be upheld because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. Medical-Vocational Guidelines and Dictionary of Occupational Titles

Under the Medical-Vocational Guidelines, an individual closely approaching advanced age, who is illiterate or unable to communicate in English, and has no previous work experience, should be found disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, Rule 202.09. Similarly, under the DOT, the jobs identified by the vocational expert at the administrative hearing--Companion, Cleaner, and Sorter--all require various levels of reading ability to perform the jobs. According to the DOT, a companion requires a reading level of 3; a cleaner requires a reading level of 1, and a sorter requires a reading level of 2.[5] Hines argues that in his RFC determination, the ALJ found her to be illiterate. As such, Hines maintains she meets the requirements of Rule 202.09 and should have been found disabled. Hines also maintains that if she is illiterate, then there is a conflict between the vocational expert's testimony that she could perform the jobs of companion, cleaner, and sorter, and the DOT.

With regard to the medical-vocational guidelines, Hines alleged she became disabled 6 days before her 50th birthday. Under such a situation, Hines should be considered a person closely approaching advanced age (50-54). *See Phillips v. Astrue*, 671 F.3d 699, 703 (8th Cir. 2012) (providing that a claimant 4 months shy of his 55th birthday was

---

[5] *See* Appendix (docket number 10-1) attached to Hines' Brief (docket number 10) at 1 (sorter), 5 (companion), and 9 (cleaner).

determined to be in the advanced age category (55 or older)). The ALJ also determined Hines has no past relevant work.[6] Finally, in his RFC determination, the ALJ found:

> [Hines] could perform job tasks only if they did not require acquiring or hearing information using written English. That is, she would not be able to read content or write information to share with others in the workplace.

(Administrative Record at 24.) While the ALJ did not specifically state Hines is illiterate, his RFC determination could be read to imply that she is illiterate. The ALJ determined "she would not be able to read content or write information to share with others in the workplace."[7] Moreover, Hines only completed the ninth grade. While in school, she was enrolled in special education courses for math and reading. Therefore, if Hines is illiterate, and based on her age and previous work experience, she would be considered disabled under the Medical-Vocational Guidelines. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, Rule 202.09. Accordingly, I believe it is important in this case to determine whether Hines is illiterate. Because the ALJ failed to fully explain the meaning of his finding that Hines "would not be able to read content or write information to share with others in the workplace[,]" I believe remand is appropriate to allow the ALJ to fully and fairly develop the record as it pertains to Hines' RFC. *See Guilliams*, 393 F.3d at 803 (providing that an ALJ's RFC assessment must be based on all of the relevant evidence). Moreover, on remand, the ALJ should also order a consultative examination that addresses Hines' functional abilities and limitations in the area of literacy. *See Barrett*, 38 F.3d at 1023 (providing that an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled).

---

[6] *See* Administrative Record at 28.

[7] *Id.* at 24.

Similarly, Social Security Regulation ("SSR") 00-4p explains that in making disability determinations, the Social Security Administration relies "primarily on the DOT for information about the requirements of work in the national economy." SSR 00-4p, 2000 WL 1898704 at *2. SSR 00-4p further provides that:

> Occupational evidence provided by a VE [(vocational expert)] . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between the VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

*Id.*; *see also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003) (an ALJ cannot rely on vocational expert testimony that conflicts with job descriptions in the DOT, unless there is evidence in the record to rebut the DOT descriptions).

Here, there are clear conflicts between the vocational expert's reliance on the DOT job descriptions and both the ALJ's hypothetical and RFC determination for Hines. While the ALJ provided the vocational expert with a limitation of not being "able to read for content on the job or to write information that's shared with others in the workplace[,]" the vocational expert simply stated Hines could perform the jobs of companion, cleaner, and sorter. Neither the vocational expert, nor the ALJ addressed whether reading levels of 1, 2, or 3 were consistent with the inability to "read for content" or "write information

that's shared with others[.]"[8] In these circumstances, and under the Social Security Administration's rules, an ALJ is required to resolve the conflict between the DOT and the vocational expert testimony. *See* SSR 00-4p; *Jones ex rel. Morris*, 315 F.3d at 979. In this case, however, the ALJ failed to address, let alone resolve, the conflicts between the DOT job descriptions and Hines' ability or inability to read and write English. Accordingly, I believe the ALJ failed to fully and fairly develop the record with regard to the vocational expert's testimony; and therefore, the ALJ's ultimate determination that Hines is not disabled is not based on substantial evidence. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007) (providing that an ALJ also has a duty to develop the record fully and fairly). On remand, the ALJ should fully and fairly develop the record with regard to the vocational expert's testimony, and resolve all conflicts between the vocational expert's testimony, the DOT job descriptions, and Hines' RFC in making his disability determination.

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where

---

[8] *See* Administrative Record at 69.

"the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, I conclude the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ failed to fully and fairly develop the record with regard to Hines' RFC, particularly with regard to whether Hines is illiterate. Similarly, the ALJ failed fully and fairly develop the record with regard to the vocational expert's testimony, and resolve all conflicts between the vocational expert's testimony, the DOT job descriptions, and Hines' RFC in making his disability determination.

## VI. CONCLUSION

I recommend this matter be remanded to the Commissioner for further proceedings. On remand, the ALJ should fully and fairly develop the record with regard to Hines' RFC, particularly with regard to her ability to read and write. The ALJ should order a consultative examination that addresses Hines' functional abilities and limitations in the area of literacy. The ALJ should also fully and fairly develop the record with regard to the vocational expert's testimony, and resolve all conflicts between the vocational expert's testimony, the DOT job descriptions, and Hines' RFC in making his disability determination. Accordingly, I believe that this matter should be remanded for further proceedings as discussed herein.

## VI. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **REVERSE** and **REMAND** this matter to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this 8th day of December, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA